Opinion of t)ie Court, by
Judge Mills.
IN the year 1784, Benjamin Plead made his will, and therein devised ali his estate, oí every kind, to his wife, during her life or widowhood, and on her death or marriage, his land, a negro man slave, and a few other articles, were to pass to his son Benjamin, and his stock and household furniture were to be equally divided between his sou Francis, and his daughter, Polly Perry; and he also made his w'jfe and Benjamin Head, executors.
During the widowhood of his wife, she, out of the proceeds of the stock and household furniture, bequeathed to Francis and Polly, purchased a female negro slave, professing that the purchase was for the benefit of the legatees to whom the consideration paid for the slave, belonged.
Some years afterwards, she sold and conveyed this slave to her son and co-executor, Benjamin Head; and she thereafter died, and after her death, Benjamin Head, the younger, died also, leaving this slave and her increase, now a large family, as part of his estate.
The children of Francis Head and Polly Perry filed their bill against the administrators of Benjamin Head the younger, to recover this family of slaves; and some of the complainants in that suit were successful, and others were defeated, because they had received their proportion of the inventory of their grandfather’s es-‘ fate, as will be seen by the two decisions in that suit, the first in I Marsh. 46, and the second in 3 Mash. 112. In that suit the administrators were made parties, and the heirs of Benjamin Plead the younger, were not parties, except two of them, who were then charged to have the slaves in possession.
After these decisions, the heirs of Benjamin Plead the younger, all united in this bill, and admit (hat the slave, who is the mother of the rest, was purchased by their grandmother, for her children, Francis and Polly, and out of their means, and designed to pass in the *254 same way as the personal estate which was employed in the purchase, wag directed to pass by the will.
'fl) That the defendants in chancery do not recollect the service of the subpeena, and the bill was taken as confessed a-jrainst them, and that they depended on the other parties to defend the suit, is no pretext for a bill-lo ve-in-vostigate the matters of the decree.
But'they charge, that their ancestor, Benjamin Head the younger, as executor of Benjamin Head the elder, paid the whole of the children of Francis aM Polly,, their full proportions of the estate bequeathed to them, without any deduction for the price-,of the slave purchased, whereby the' title of the whole of them was extinguished-in said,slaves; but that Alexander Macey, the acting administrator of their immediate ancestor, Benjamin Head the younger, had failed io set up this matter in bar. of the claim, in the former s.uit, as to part', of them, although he held the receipts; that; when hire was charged against the estate of their ancestor, and a deduction" allowed for raising the young and nursing the infirm, hd failed to make proof, of that deduction, and that he managed the suit fraudulently, and that there was collusion between him and the children of Francis and Polly, and that, it was, by concert, so managed that they lost the suit.
They obtained an injunction, restraining the division, and possession of the slaves directed by that decree, and enjoining the money decreed for the hire, and prayed to be permitted to assert their right to the slaves, and to be exonerated from the hire, and thafcthq. slaves might be decreed to them.
The court below dissolved the injunction, and dismissed the bill with costs; and to reverse this decree, this writ of error is prosecuféd.
(1) As to two of the complainants, who were made parties to the original suit as defendants, there is scarcely a pretext for their claim in this. That decision is as complete a bar, as to them, as the decision of a court of •competent jurisdiction , on the same point, could be.
It is true, the bill in that suit, as to them, was taken. pro confesso; and the only ground now set forth, resembling matter for a review, is, that they have now no-knowledge or recollection of the service of the subpoena. They are, however, not bold enough to contest the service by a flat denial; but rather make an apology for not attending to it, by pleading their confidence in Alexander Macey, the administrator. Tbcir excuse, therefore, is wholly insufficient to warrant a retrial of the same matter. Their only ground, then, must be, the fraud and collusion of the administrator in *255 his defence, which will be hereafter eonsider-ijaakinj _ed.
(2) Slaves arc assets in theadminis-tratór, and he represents t]]eJn1as regard to controversies thekTitle^a he does any other chat-
tion o'n theti-tie to slaves, between the tor'only^'nd an adverse claimant, is ^inst'tlm'3’' distributees ?n any future tbc^érenot parties. °
Tille to per-g°"“elgyca"ti tested’with and settled in b7 or. np’mnsf. fin-against administrators or exe.cutors, ?annot be ro-investigated at the suit of the diitribu-te6S orlega-tees — Arsu.
(2) On the part of the other complainants, it is contended, that as they were not parties, .the decree cannot affect them; and, therefore, they are authorised to assert their claim without prejudice.
It is true, they were not parties to that controversy; but the administrator of their ancestor’s estate was the main and efficient defendant, and the operation of the tlecree upon me.ir interests, must rest on the question, how far a decree against the administrator, touching the personalty, will bind the distributee.? ,
It is true, the estate in question is slaves.; but they are still assets in the hands of an administrator, and he represents them as .completely as chattels, with regard controversies of this nature.
The legal title and legal remedies belonging to .chattel interests, are in the administrator. Recoveries against him, for debts, reach all chattels, and he can sell them, and the title of the purchaser is conclusive against ll).e distributee. See Stamps vs. Beatty, Hardin 337.
If the administrator is barred at law, the title of the distributee is forever gone. If titles to personalty and slaves, contested with, and settled in suits by .and against administrators or executors, can be rein-vestlga-ted at the suit of the distributees or legatees, and the .adjudication in the former controversy proves nothing, great uncertainty must prevail, in the title of-chattels, throughout society. Every judgment rendered against him, to discharge which the chattels w.ere expended, would be liable to be ov.erhaled at the instance of the distributee and legatee. In short, the very design ^ . , , ° » tne office, is to appoint $ title-holder, with whom the . t - - rignts of tlie decedent may be contested; and useless would b.e the appointment, if .these contests have no -weiffht
, . . . , X he administrator is a trustee. There must be a privify between him and the distributee, and when the latter succeeds to the estate, he must claim under the former. Hence, the adjudication between the administrator and others, even where the distributee is not a party, must be conclusive against the latter, in a future contest.
(3) A decree ¿ay be ira-peached fur fraud in the byra* proper* bill for the purpose — Ar.
oientfor the distributees to set aside a fHudnlent a-rainst the ad-ministra tor • mUo^er-mittherato re-investigate tte title, bofore°that suit, ed the inter-’tbVdrim-ants, where it appears he suitobsti-the nately, tho’ notjudicious-denies'1 anUly fraucí, and there is no other evi- . deuce con* duciug to prove it. ■
We admit, that express adjudications on this point are hard to be found, and in the case of Mason’s devisees vs. Peters’ administrators, 1 Man. 437, it is said to be a point not decided; and in that case it was very properly decided, that a judgment against an executor, was no evidence against a devisee, in a contest to reach the real estate, a fund which the executor did not represent. We, however, find the case embraced by the principles of evidence, and conceive that the distributees had, in this case, no right to enter into the question of title to these slaves, as if it never had been decided.
(3) If they succeed, therefore, it must be by impeach* ing the decree for fraud and collusion ptactised by the parties to the suit. It is readily admitted, that a decree may be impeached for fraud, by a proper bill /or that purpose. Carneal vs. Wilson, 3 Litt. Rep. 80.
On this point, however, they have failed in fact.
The frau(j and collusion is flatly denied on both sides, and it is not shown that the receipts relied on as omit-tec*to be used by ^le administrator in the former suit, apply to the transaction, and it is denied that they do.
The only circumstance conducing to show any thing *s’ administrator, before that suit was commenced, had purchased the interest of one of the claimants.
This he seems to have done with his own money, and it does not appear to have influenced the defence which he made in his fiduciary character. The dc-pencc mac]e was obstinate, if not judicious, and we do not conceive that this1 circumstance alone is sufS-to convict him of fraud and collusion; and as to tfie opposite party in these suits, there is no pretence for saying they were guilty of any.
(4) We pass to the claim against the administrator for negligence in making defence,
It must he admitted, that Ins defence, as io some part of it, does appear not to have been well timed; [)u(; there is no circumstance conducing to show that he acted with bad faith, or such gross negligence as to subject him to the price of the slaves, without which he' cannot bo made liable, according to the principles recognized in the case of Thomas vs. White, &c. 3 Litt.Rep. 177.
Besides, it was incumbent on the complainants in this suit to have shown that the defence which he fail *257 ed to make was good, which they have not done. The court was, therefore, correct in dismissing the- bill.
(4) for di?-tributees to ministrator^” liable for neg-ligencein thó de.il;noe a him, it is not °«ly access^ ■ ry to prove guilty ofgiosa negligence or bodiaio*1’ Hut fenoe^hey6* charge him with neglect-have’ availed,
utegivingtm per centum damages on junctions a- ■ gainst judg-^t’appiy^o injunctions against de-^!s.iDtherr-fore,’on the dissolution of ln.iunc-tions, no damages can bo giyen.
(.6\Theofian eeíloiAvóuld not, perhaps, dic'tf ii'oTa c)a;^ f01. the hire of slaves retained m defenriau t’s possession, pond;»: a farther litigation, from the date 'of . the assessment of their hire in the former., suit', where it is set up in an original bill — - Arg.
*257 (5) It is now contended, that the court erred in giving ten per centum damages on the dissolution of the injunction. ,
Two of the complainants were the parties against whom the former decree was rendered in favor of some of the defendants in this suit; the proper parties were, therefore, before the court, and the objection to this part ot ttie decree must rest on the proper construction ot the act of assembly which authorises the ten per cen-turn to be given. '
tits is a decree m equity, enjoined by a subsequent bill; and is a decree within the terms of the act?
The expressions of the act are: “ If the injunction is dissolved in whole or in part, the complainant shall pay ten per centum, exclusive of legal interest, upon the sum for which it shall be dissolved, besides costs; and the clerk of tile court.in which the judgment ul law was recovered, shall issue an execution for the same, when he issues an execution upon the said judgment.'” - Dig. E. K. 670.
. As the dehnitive, 11 me injunction,” is used, we are necessarily led to enquire what injunction was intended. The former part of the section answers the ques-íion. “ No injunction shall be granted to any judgment at law.” ‘• No injunction sliall be granted until the party shall release all error in tiie proceedings at law which are prayed to be enjoined.” This, then, js the kind of injunction to judgments or proceedings at law, (o which the penalty of ten per centum is attached, and decrees in chancery are not included.
It may be said, that decrees are witiiin the spirit of the act; but if it he conceded, for argument’s sake, that , . i i- r . , , this is to be construed as a remedial, and not a penal' statute, we could not still bring decrees in chancery within it, especially as the remedy given is an innova-lion upon the established rules of equity. So much of the decree, therefore, as gives te» per centum, is deemed erroneous. ■
(6) Otherqueslions in the decree present themselves. The defendants, or some of them, in an answer in the nature of a cross bill, charge, that the complainants, or some of them, and Macey, and the administratrix, had held and detained the possession of the slaves, ever *258 sincé tbe final decree in the former suit; and they pray that they hi ay answer these charges, and be made accountable for the hire, ever since the hire was settled by the former de’eree. The court accordingly decreed tbe hire, and the propriety of that decree is questioned by the assignment of error.
But a defendant,to an original bill may,by cross bill, set up claims touching the subject of dispute, & have them adjusted in equity, though originally cognizable only in a court of law — Arg.
Hire cannot be recovered for the use of slaves retained in possession, Between the date of á decree in favor of an adverse claimant, against ah administrator, for th@ surrender of them, & the final decree dismissing a bill brought by distribu-tees, impeaching it as fraudulent, and enjoining its execution, & seeking to re-instalo tiie title,
*258 The right to recover damages for the detention of an Article, alter a decision of a court of law or equity, determining the right and closing the assessment of value and hire, until the time of the judgment, and an appeal from that decision; is a question that might be frequently expected to present itself, and yet no case has occurred, since the origin of this State, or, indeed, in the decisions of England and Virginia; prior thereto, known to this court.
The first doubt which presents itself, is; whether tbe parties here had not a complete remedy' at Saw, and ought; therefore, to have been compelled to resort to it.
If (his was an original bill on the part of the defendants below; this question might arise; but, as the claim is set up by way of cross bill, after being first im-pleaded in equity by their adversary, they áre not under the same necessity of showing matter to sustain the jurisdiction of the court; and it is a rule, that defendants to an original bill may, by a crossbill, set up legal" claims touching the subject of dispute, and be allowed to adjust them in a court of equity; without being sub-* jcCt to have sue!) claims rejected, because they were cognizable in a court of law. Mit. 76, Cowp. 86; Ford and Warren vs. Sproule and Co. 2 Marsh. 528.
If, then, the defendants below have any remedy fof the demand, they might assert it in this mode, and the question must rest on their right to assert and recover the demands
The claim to such accruing dntnages may Seem equitable, on the first blush; still, however, such claims, although apparently equitable in particular cases, may have an injurious tendency upon the general good, if tolerated. Not only the'.detentiori of property' recovered in an action of detinue, and by the decree .of the chancellor, presents this claim; but all judgments for money, suspended during an appeal or injunction, present claims resting on precisely the same principles;' yet no case can be produced, of the allowance of interest lor the detention thereof, even in a *259 point of equity, and such a claim,has been refused at the present term, in the case of M'Millan vs. Scott.
There can be i)o recovery, either at law or in equity, for the deten? tion of property after the hire, rents or. damage», are assessed, however long, the final de- ' termination of the cause may bo postponed by the delays of the Judge, by ap peals or injunction, except where specially provided by statute. For such, a remedy there is, at common law, no preceden!» —Arg.
For an application of the above principle to rents of land pending-an appeal,see M’Clana- ' hail’s heirs vs-Henderson’s heirs, the next succeed-. irig case.
It,is true, that the legislature, by a statute, in the case of appeals from, and injunctions on judgments founded upon contract, have' allowed interest, but llave not extended, ft to other cases. This, however, shows what the law was before, and goes far to prove that there wns no su.clv remedy before, and suggests a doubt of the propriety of this court giving a remedy in such a case, without a precedent, further than the will of the legislature shall direct.
The same may be said to be the case with regard to the rents of lands, the possession of which is held after-judgment or decree. After the proceedings under the occupying claimant law's have been closed, it has not been practised, to send, other commissioners to.add accruing rents, except where the legislature has directed it; and this argues the propriety of leaving such cases to legislative interposition.' Then no cases will come in, except those which the legislature shall allow, when, if"the allowance is made on a supposed existing principle of common law or rule of equity, it must draw with it a numerous class of cas.es, not easy to be recounted.
We well know, that time is oflen necessary for delifo eration in the same court, between verdict and judgment, or the, assessment and report of commissioners, and the final decree in a chancery suit. Then., frequently, the most difficult questions occur, and a court, of original jurisdiction may long deliberate, before it (janeóme to, a satisfactory conclusion. Á special ve& diet, a demurrer to evidence, a point, reserved, may furnish the subject of thought, from term to term. If accruing damages for detention are permissible, the court, in such case, for this delay, would have to issue a new venire, and add the accruing.damages, which hejs never yet been done. No reason is perceived, why the equity and law is not as applicable to that case as the present. And if the party is not allowed such acr. cruing damages in the same,court, and his adversary, has the right to the deliberation and, decision of this court, all in the same cause and same system of courts, -vye see no reason why the claim should not be disallowed in one case as .well as the other. The law has ney-. er yet tolerated the recovery, and shall we hegin it *260 now? Is not the absence of a precedent for such re'- - coverJ> a strong argument that the law is against it?
Sharp, attorney-general, for plaintiffs; Tcdd%íor defendants.
Precedent is not wanting'in support of this opinion.. In the case of Alderson vs. Biggers and others, 4 Hen. and Mun. 470, the judgment in an action of detinue for slaves, was suspended, in passing through the different courts, for eight years, and the execution thereof after-wards obstructed by the obstinate and perverse conduct of the defendants. The superior court of chancery decided, against the claim for accruing damages, because the remedy, if any, was cognizable at law. The action at law was afterwards brought, and the district court decided that the action would not lie, and that decision,, on argument and deliberation, was affirmed by the epurtof appeals of Virginia. 4 Mun. 528.
The learned judge who delivered the opinion, observes, that the case must have occurred a thousand times, and yet no recovery in such case was ever had. From this he draws an argument against the existence of the right.
This case is in point, It is truc, we do not view ourselves as concluded by that decision; but, for the same reasons, we deem it prudent to adopt it, under similar circumstances, and thus to close the flood-gate of litigation, in numerous similar cases, which a contrary decision would open.
The decrees of the court below must, therefore, be reversed with costs, and the cause be remanded, with directions there to disrpiss the bill and cross bill, without costs on either side. <